## Major et al. v. Flock Brewing Company

*Williamson & Cupp*, for plaintiffs.

*Furst, McCormick, Muir & Lynn*, for defendant.

GREEVY, J., March 9, 1954.—Plaintiffs, Robert L. Major, Marion E. Major and Veronica I. Major, instituted this action in assumpsit against defendant, the Flock Brewing Company, a Pennsylvania corporation. After the issue in the case was joined the parties thereto, by agreement, dispensed with trial by jury and submitted it to this court for decision. From the testimony we make the following

### Findings of Fact

1. Plaintiffs, Robert L. Major, Marion E. Major and Veronica I. Major, are residents and citizens of the City of Williamsport, County of Lycoming and Commonwealth of Pennsylvania.

2. Defendant, Flock Brewing Company, is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, having its chief office and principal place of business in the City of Williamsport, County of Lycoming, and Commonwelath of Pennsylvania.

3. Under date of March 12, 1942, Flock Brewing Company made, executed and delivered to Anthony J. Grieco and Nancy A. Grieco, his wife, hereinafter referred to as Griecos, its certain deed granting and conveying certain real estate situate in the eighth ward of the City of Williamsport, County of Lycoming and Commonwealth of Pennsylvania and known as 605 Franklin Street, which deed is recorded in the office of the Recorder of Deeds in and for Lycoming County in deed book, vol. 319, at page 36.

4. On the same date, March 12, 1942, and contemporaneously with the execution and delivery of the deed hereinbefore referred to, defendant entered into a written agreement with Griecos in which defendant agreed, inter alia, that in return for being permitted to use vaulted cellars or caves located on Griecos' property for storage purposes for a period of three years, that it, the defendant, would continue to furnish steam to heat the duplex apartment house located on the property, "until such time as Griecos shall notify Flocks in writing to discontinue the same." Griecos, in return, to pay $165 per heating season for this service, and in the event that defendant was required to pay more than $4 per ton for fuel, or in the event that Griecos should increase the radiation, the yearly charge would be adjusted proportionately. The agreement provided further that "all the terms and conditions in this agreement contained shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the several parties hereto."

5. Under date of March 2, 1946, Griecos made, executed and delivered their certain deed granting and conveying the property in question to Robert L. Major and Marion E. Major, to hold an undivided one-half interest therein as tenants by the entireties, and to Veronica I. Major and Harriet C. Major, to hold the other undivided one-half interest as joint tenants with right of survivorship, and Harriet C. Major died prior to the filing of this action, thereby vesting her interest in this real estate in the survivor, and Robert L. Major, Marion E. Major and Veronica L. Major, plaintiffs herein, are the owners of said real estate.

6. March 2, 1946, the contract hereinbefore referred to was assigned by Griecos to plaintiffs. The assignment of the agreement constituted a valid part of the

consideration for the purchase by plaintiffs from Griecos of the property.

7. Plaintiffs paid for heat from March 2, 1946, to January 1, 1947, at the rate of $19.93 per month, from January 1, 1947, to June 1950, at $24.06 a month.

8. Radiation in the house was increased by 365 feet on the third floor in 1942.

9. Plaintiffs stopped paying in June of 1950, when defendant terminated the agreement and returned plaintiff's check covering June 1950.

10. On August 1, 1950, plaintiffs secured an injunction against defendant, by reason whereof, defendant furnished heat for the 1950-51 season and plaintiffs paid $288.72, the sum requested by defendant. The injunction was dismissed on May 24, 1951.

11. Defendant has not furnished heat since the 1950-51 heating season.

12. In November 1951 defendant sold its property, including the boilers.

13. Plaintiff is indebted to defendant in the amount of $1,747.49, for increased radiation; defendant is indebted to plaintiff in the amount of $4,738.91, for the breach of the contract.

14. The verdict of this court is in favor of plaintiff in the amount of $2,991.42, with interest from September 1951.

## Discussion

A valid and binding contract was entered into by Griecos and defendant, competent parties, and was properly assigned by Griecos to plaintiffs. The contract is definite in all respects except time of duration.

" 'The law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Though there

are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves. The maxim, Id certum est quod certum reddi potest, applies.' ": Rossmassler et al. vs. Spielberger et al. 270 Pa. 30, 41.

" ' "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." "Contracts must receive a reasonable interpretation, according to the intention of the parties . . . if that intention can be ascertained from their language" ' ' ". . . in order to ascertain that intention, the Court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement." ' ": Betterman v. American Stores Company 367 Pa. 193, 203-204.

Generally a contract for an indefinite period will be construed to be for a reasonable time or terminable at will unless the intention of the parties can be ascertained. In construing a contract the intention of the parties is the ultimate guide. The intention of the parties is clearly set forth in this case, in that defendant agreed to furnish heat for a specified property so long as Griecos or their assignees desired it, in accordance with the terms of the agreement. Taking into consideration this intention of the parties, the surrounding circumstances, the situation of the parties, the objects they had in view and the nature of the subject matter of the agreement, to wit, the heating of a specified property, we find that the duration of the contract was for the "life of the house" unless terminated sooner by Griecos or their assignees. The contract not being terminated by Griecos or their assignees, the

agreement was to continue for the "life of the house." By the testimony, the "life of the house" from September 1951, was 25 years.

Defendant breached the contract and plaintiffs are entitled to damages. The law does not require that proof in support of claims for damages must conform to the standard of mathematical exactness but it is sufficient if it affords a reasonably fair basis for calculating plaintiff's loss. This contract being a continuing one its breach is an anticipatory breach and plaintiff is entitled to recover such damages as arise from the nonperformance of the contract. An award is made for the plaintiffs' yearly loss, taking into consideration that testimony as well as the testimony on cost of increased radiation, and in addition thereto an award is made to plaintiffs for the cost of heating installation.

We find that plaintiffs are entitled to receive the present worth of their damages, or the sum of $4,738.91, less $1,747.49, inclusive of interest, that plaintiffs owe defendant for increased radiation. No award is made to defendant for the other items of damages such as wages paid to foreman and engineer in September 1951, extra coal in 1951, and so forth.

In view of the foregoing, we make the following

### Conclusions of Law

1. This court has jurisdiction of the parties and the subject matter of this litigation.

2. Griecos and defendant entered into a valid and binding contract.

3. Griecos properly assigned their interest in the contract to plaintiffs.

4. It was a binding contract entered into by competent parties and is binding on the parties hereto.

5. The contract was indefinite as to its duration, that is, that it was to last "until such time as Griecos shall notify Flocks in writing to discontinue the same."

6. The intention of the parties was that the contract was to last for the "life of the house" unless discontinued sooner by Griecos or their assignees.

7. The contract was not terminated by Griecos or their assignees.

8. The contract was breached by defendant and plaintiffs are entitled to damages.

9. The law does not require plaintiffs, in support of their claims for damages, to conform to the standards of mathematical exactness, but it is sufficient if it affords a reasonably fair basis for calculating plaintiff's loss: Betterman v. American Stores Co., 367 Pa. 193.

10. The contract was a continuing one and its breach is an anticipatory one.

11. Plaintiffs are entitled to recover such damages as arose from the nonperformance of the contract less the amount due and owing to defendant on its counterclaim.

12. Plaintiff is entitled to receive the present worth of such amount.

13. We find in favor of plaintiffs and against defendant in the amount of $2,991.42, with interest from September 1951.

Notice of the following verdict shall be forthwith given by the prothonotary to the parties, or their attorneys, and if no exceptions are filed in the proper office within 30 days after service of such notice, judgment shall be entered thereon by the prothonotary.

### Verdict

And now, to wit, March 9, 1954, the trial judge, sitting as a court without a jury, herewith finds the verdict in favor of plaintiffs, Robert L. Major, Marion E. Major and Veronica I. Major, and against defendant, Flock Brewing Company, in the amount of $2,991.42, with interest from September 1951.